JUSTICE RICE,
concurring in part and dissenting in part.
¶33 I concur in the result of this case, believing that parents must exercise reasonable care to supervise their children under certain circumstances. However, I object to the standard adopted by the Court herein for determining parental liability as overly broad and unworkable, and therefore dissent from that portion of the opinion.
¶34 The issue set forth in ¶ 2 is whether a parent has a duty to supervise his or her child to prevent harm to others. In answering this question affirmatively, the Court adopts § 316 of the Restatement (Second) of Torts (1965) as the standard by which parental liability is to be judged. It provides:
A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it [sic] from intentionally harming others or from so conducting itself [sic] as to create an unreasonable risk of harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) *49 knows or should know of the necessity and opportunity for exercising such control.
The 1965 Restatement, drafted by a previous generation, focuses not on supervising, but on “controlling” a child, and in so doing, reflects a bias from yesteryear, when it was believed that a parent could actually accomplish such a thing. Thus, despite addressing a question regarding a parent’s obligation to supervise a child, the Court imposes a duty to control a child. From my observation of many others, and from my own endeavors, including 19 years of trying every approach to child rearing from Spock’s loving flexibility to Dobson’s loving discipline, I am convinced that controlling one’s child is a notion far too elusive to support the imposition of parental liability. Even parents who actively and responsibly supervise their children can find it difficult, if not impossible, to control their children.
¶35 Further, § 316 is practically indiscernible. A parent has the duty thereunder to control a child if he or she “has reason to know that he has the ability to control his child.” When, exactly, should a parent have reason to know that he or she has the ability to control the child? Perhaps a parent knows this when his or her toddler is tucked into bed and asleep. However, when older children are running around the neighborhood or teenagers are heading downtown in their own car, most parents would claim that the control they have over their children is virtually nonexistent.
¶36 This unworkability of § 316 was partially addressed by the dissenting opinion in J.L. v. Kienenberger. Justice Trieweiler stated:
I would, as has been done in other jurisdictions, limit the application of parental liability under Section 316 to those situations where the parent was aware of the particular dangerous propensity which cause the harm complained of. See Pesek v. Discepolo (Ill. App. 1st Dist. 1985), 475 N.E.2d 3.
Kienenberger, 275 Mont. at 121, 848 P.2d at 477. I would incorporate this standard within a parental duty to supervise. Thus, if a child has previously demonstrated a particular dangerous propensity, and a parent fails to protect others from that propensity by reasonably supervising the child, then liability should be imposed. I would adopt such a standard of parental liability as an alternative to § 316, and remand this case for further proceedings consistent with such a standard.